IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.   14-cv-02943-LTB-KMT

PEGGY MONTOYA,

       Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,

       Defendant.

_____

# ORDER
_____

This dispute over uninsured/underinsured ("UM/UIM") motorist coverage under an automobile insurance policy is before me on Defendant Allstate Insurance Company's ("Allstate") Motion for Summary Judgment [Doc. # 51] on all of Plaintiff Peggy Montoya's claims.  Allstate argues that Ms. Montoya's claims—for breach of contract, common law bad faith breach of an insurance contract, and unreasonable delay or denial of benefits ("statutory bad faith") under Colo. Rev. Stat. §§ 10-3-1115, -1116—are not ripe and must therefore be dismissed for lack of subject matter jurisdiction.  Allstate further argues that it is entitled to summary judgment on these claims.  I have reviewed the parties' briefing and determined that oral argument would not materially assist me in deciding Allstate's motion.  For the following reasons, I **DENY** the motion.

## I.  Background

On December 14, 2012, Ms. Montoya was injured in a car accident that the parties agree resulted from the negligence of another driver, Romeo Gomez-Ramos.  1st Am. Compl. ¶ 6 [Doc. # 4].  At the time of the accident, Ms. Montoya was covered under an automobile insurance policy

issued by Allstate, which included UM/UIM coverage with a limit of $100,000 per person and $300,000 per accident. *Id.* ¶ 5. By the next day, Ms. Montoya had advised Allstate of the crash. Doc. # 61-3 at 1. On July 10, 2013, Ms. Montoya's lawyer sent a letter to Allstate providing it "formal notice of a potential UM/UIM claim." Doc. # 58-4 at 2. In April 2014, Ms. Montoya, with Allstate's permission, settled a bodily injury claim against Mr. Gomez-Ramos' insurer for the $25,000 liability limit of his policy. 1st Am. Compl. ¶ 15 [Doc. # 4]. She filed this lawsuit in Colorado state court in October 2014. Doc. # 1. Allstate subsequently removed the case to this Court. *Id.* Ms. Montoya alleges that Allstate "claims it is still investigating [her] claim" and "[t]o date . . . has not paid [her] any of her entitled UIM benefits." 1st Am. Compl. ¶ 15 [Doc. # 4]. Her alleged injuries include lower back pain, right hip pain, and sacral disorders. *Id.* ¶ 8. She seeks damages for "permanent physical injuries, pain and suffering, loss of enjoyment of life, physical impairment, [and] medical bills and expenses," among other things. *Id.* ¶ 18. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Analysis

### A. Ripeness

"The issue whether a claim is ripe for review bears on the court's subject matter jurisdiction under Article III of the Constitution." *Bateman v. City of W. Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996) (citation omitted). "Accordingly, a ripeness challenge, like most other challenges to a court's subject matter jurisdiction, is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *Id.* Such a challenge "can be raised at any time." *Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1196 (10th Cir. 2000). Courts use a two-part inquiry to determine whether a claim is ripe. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). First, the court asks "whether the case involves uncertain or

contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (internal citation and quotations omitted).  Second, courts assess the "hardship to the parties of withholding judicial resolution." *Id.*  I address these considerations in turn.

      This case does not involve any uncertain or contingent future events.  Allstate argues that, because the policy language limits coverage to damages that the insured is "legally entitled to recover," Allstate's "contractual obligation to pay UM/UIM benefits will not be triggered" until Ms. Montoya proves "the extent of [her] damages" in a "judicial proceeding against the uninsured motorist or [his] insurer, or through an arbitration proceeding."  Mot. at 8 [Doc. # 51].  This argument is contrary to Colorado law, which the parties agree applies here.  Colorado's UM/UIM statute provides that policies "shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained, excluding exemplary damages, up to the maximum amount of the coverage obtained."  Colo. Rev. Stat. § 10-4-609(1)(c).  Therefore, "[f]or purposes of triggering UIM coverage, it is irrelevant whether and in what amount the insured recovers from the underinsured motorist." *Tubbs v. Farmers Ins. Exch.*, 353 P.3d 924, 926 (Colo. App. 2015) (internal citation and quotations omitted).  Rather, what is relevant is "the limit of any liable party's legal liability coverage." *Id.*  Indeed, the Colorado Court of Appeals has found policy language predicating UIM coverage on the exhaustion of the tortfeasor's legal liability coverage void and unenforceable because it purported to "impose[ ] a condition precedent on coverage mandated by the statute." *Id.* at 926-27.  Accordingly, the condition precedent that Allstate proposes—even if it were supported by the language of the policy, which neither party has provided—would be unenforceable.

      Ms. Montoya's bad faith claims similarly do not involve uncertain or contingent future events.  Under the former version of Colorado's UM/UIM statute, coverage was mandated in "an

amount equal to the gap between the amount an insured receives from an underinsured driver and the insured's UIM policy limits." *Freeman v. State Farm Mut. Auto. Ins. Co.*, 946 P.2d 584, 585 (Colo. App. 1997). A bad faith claim could not accrue "until the insured ha[d] obtained a judgment against or . . . settled with the underinsured driver" because "the insurer [could not] know the amount of UIM benefits potentially due to its insured" until that time. *Cork v. Sentry Ins.,* 194 P.3d 422, 428 (Colo. App. 2008). Ms. Montoya, with Allstate's permission, settled with Mr. Gomez-Ramos' insurer for the legal liability limits of his policy. So her bad faith claims would have accrued even under the former version of the statute. As noted, under the current statute, only the limit of any tortfeasor's legal liability coverage—not the amount of money the injured party recovered from the tortfeasor or his insurer—need be ascertainable to determine the amount of UIM coverage available. The parties agree that Mr. Gomez-Ramos' legal liability coverage limit was $25,000. Accordingly, Ms. Montoya's bad faith claims have certainly accrued by now.

I turn to the second factor in the ripeness analysis, the hardship to the parties that would result from withholding judicial resolution of Ms. Montoya's claims. The parties have undertaken significant discovery in this lawsuit. Trial is set to begin in about three months. And the Colorado Supreme Court has observed that the public policy of the state "protects the insured from being forced to traverse undue procedural hurdles and re-litigate matters prior to a recovery" under a UM/UIM policy. *State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d 177, 185 (Colo. 2004). In view of these facts, I conclude that it would work a substantial hardship on the parties to delay resolution of Ms. Montoya's claims.

The facts of other UIM coverage disputes confirm that there is nothing premature about Ms. Montoya's claims. For example, in one case, as here, the insured settled with the

tortfeasor's insurer for the liability policy limits of $25,000 and then sued his own insurer for

UIM coverage; there was no indication that he sued the tortfeasor prior to doing so. *See Walker*

*v. American Std. Ins. Co. of Wisc.*, No. 11-cv-00927-LTB, 2011 WL 3876901, at *1 (D. Colo.

Sept. 2, 2011). In another case, the Colorado Court of Appeals held that sufficient evidence

supported a verdict against an insurer on a statutory bad faith claim where, as here, the insured

sued his insurer after settling with the tortfeasor's carrier; again, there was no indication that the

insured brought a lawsuit against the tortfeasor. *See Vaccaro v. American Fam. Ins. Grp.*, 275

P.3d 750, 754, 759 (Colo. App. 2012); *see also Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F.

Supp. 2d 1091, 1112 (D. Colo. 2013) (there was sufficient evidence to defeat insurer's summary

judgment motion on bad faith claims in UM/UIM coverage lawsuit brought by insured after

accepting policy limits payout from tortfeasor's insurer). Accordingly, I conclude that Ms.

Montoya's claims are ripe and deny Allstate's motion with respect to this issue.

**B. Summary Judgment**

    **1. Standard of Review**

    A court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). The movant has the initial responsibility of identifying for the Court "particular

parts of materials in the record"—including, for example, depositions, documents, declarations,

and interrogatory answers—that it believes show the absence of genuine issues of material fact.

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mares v. ConAgra*

*Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Once the movant has done so, the non-movant

may not rest on the allegations contained in his complaint, but must "respond with specific facts

showing the existence of a genuine factual issue to be tried." *Otteson v. United States*, 622 F.2d

516, 519 (10th Cir. 1980) (internal citation omitted); Fed. R. Civ. P. 56 (c) & (e).  If a reasonable

jury could not return a verdict for the non-moving party, summary judgment is proper and there

is no need for a trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The operative

inquiry is whether, viewing the evidence in the light most favorable to the non-moving party and

drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict

for that party.  *Id.* at 252; *Mares*, 971 F.2d at 494.

### 2.  Breach of Contract Claim

Under Colorado law, a breach of contract claim has four elements: "(1) the existence of a

contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to

perform the contract by the defendant; and (4) resulting damages to the plaintiff."  *Contrada,*

*Inc. v. Parsley*, No. 10-cv-00646-WYD-CBS, 2012 WL 573918, at *2 (D. Colo. Feb. 22, 2012)

(citing *Western Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992)).  Allstate argues

that there is no evidence to support the third element, failure to perform, because Ms. Montoya

has not "file[d] suit against the uninsured tortfeasor and obtain[ed] a judgment" and "[a]

determination of the amount of damages which an insured is 'legally entitled to recover' is a

necessary condition precedent to the duty of Allstate to pay benefits."  Mot. at 10-11 [Doc. # 51].

This is simply a restatement of Allstate's argument regarding ripeness.  As explained above, an

insured in Ms. Montoya's position need not file suit against the tortfeasor to establish the amount

of damages to which she is entitled before suing her insurer for UIM coverage.  Rather, the

insured may do as Ms. Montoya has done here: bring suit directly against her insurer to establish

the amount of damages to which she is entitled.  Accordingly, Allstate has not shown that it is

entitled to judgment as a matter of law on Ms. Montoya's breach of contract claim.

### 3.  Common Law and Statutory Bad Faith Claims

To make out a common law claim for bad faith breach of an insurance contract in the first-party context, "the insured must prove both that the insurer acted 'unreasonably under the circumstances' and that 'the insurer either knowingly or recklessly disregarded the validity of the insured's claim.'"  *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004) (internal citation and quotations omitted).  Similarly, a statutory bad faith claim may be brought for "unreasonably delay[ing] or deny[ing] payment of a claim for benefits owed to or on behalf of any first-party claimant."  Colo. Rev. Stat. § 10-3-1115(1)(a).  The insured must show that "the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action," but, unlike at common law, need not show that the insurer acted knowingly or recklessly.  *Id.* § 10-3-1115(2); *Vaccaro*, 275 P.3d at 756.  "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury."  *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 497 (Colo. App. 2011).

Allstate argues that Ms. Montoya's bad faith claims fail as a matter of law "because Plaintiff failed to provide documentation to support her bodily injury claim and prevented Allstate from independently obtaining that information."  Mot. at 11 [Doc. # 51].  This is important because "an insurer may deny invalid claims and those lacking supporting documentation, and this limits the insurer's duty of good faith."  *Dean v. Allstate Ins. Co.*, 878 F. Supp. 1397, 1403 (D. Colo. 1993).  There is sufficient evidence, however, from which a jury could find that adequate documentation supported Ms. Montoya's claim.  While the parties have not provided all documentation relating to her claim, a number of records provided by Allstate arguably support Ms. Montoya's claimed injuries.

For example, in a February 2013 medical record, Ms. Montoya's physical therapist noted palpable tenderness over her right sacroiliac joint line, pain with extension in the "right side bending" and "right rotation" postures, and various limitations of range of motion. Doc. # 61-5 at 7-8. In a July 2013 record, one of Ms. Montoya's doctors noted that she had recently "developed sharp pains in the right groin and right low back." *Id.* at 17. On examination, the doctor observed that Ms. Montoya's right hip was tender with extremes of internal and external rotation, very tender over the right groin and right pubic tubercle, and very tender over the proximal aspect of the adjuctor tendon. *Id.* In addition, Allstate has provided a letter from Ms. Montoya's doctor, Dr. David J. Schneider, indicating that a labral tear in Ms. Montoya's right hip was "causally related to the automobile crash." Doc. # 51-14. Allstate complains of "disparities in the medical records" and points to "information provided to Allstate [that] was inconsistent with Plaintiff's injury claims." Mot. at 5 [Doc. # 51]. However, it is not the Court's role at the summary judgment stage to resolve such disparities and inconsistencies. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (court "cannot resolve material disputed factual issues"). Based on the foregoing, there is certainly adequate evidence from which a jury could determine that Ms. Montoya presented a valid and documented claim to Allstate.

In addition, there is no indication that Ms. Montoya or her counsel were anything but cooperative with Allstate's investigation, and Allstate acknowledges as much. *See* Reply at 6 [Doc. # 61] ("For purposes of this Motion only, Allstate does not dispute that Plaintiff fully cooperated with Allstate's requests for information."). Indeed, Allstate's corporate representative testified during his deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) that, based on his "review of the documents in this case," Ms. Montoya did not "fail to cooperate in any way" and, further, that he had no "independent knowledge outside of [his]

conversations with counsel that showed [him] that Ms. Montoya failed to cooperate in any way."
Doc. # 58-6 at 3.   Further, Allstate has submitted documents indicating that Ms. Montoya timely
responded to several requests for medical records and other documents by Allstate's adjuster.
*See, e.g.,* Docs. # 51-2, 51-3.   It appears that Allstate takes issue with the fact that "Plaintiff did
not submit all of her relevant medical records and wage loss information with her demand
letter."  Mot. at 13 [Doc. # 51].   But Allstate cites no authority for the proposition that it is the
insured's responsibility to provide all relevant records at the time she makes her claim.   In any
event, that proposition is inconsistent with Colorado law recognizing the insurer's responsibility
to conduct a good faith investigation.  *See, e.g., Brekke*, 105 P.3d at 189.

There is additional evidence from which a reasonable jury could conclude that Allstate
acted unreasonably with respect to Ms. Montoya's claim.   Ms. Montoya testified at her
deposition that Allstate had "not properly investigated [her] claim" in that it did not "talk to the
correct doctors" in regard to her injuries and did not make "any attempt to look into the whole
situation."  Doc. # 58-9 at 3-4.   Ms. Montoya further highlighted the fact that "the accident
happened in 2012" and Allstate was "notified of [her] accident at the time" but "did nothing to
go forward with it in like a year and a half."  Doc. # 58-10 at 3.   Indeed, documents provided by
Ms. Montoya indicate that Allstate was notified of the accident by December 15, 2012; that
Allstate responded on December 18, 2012 with a letter stating that "we received your claim and
started working on it"; and that Ms. Montoya's lawyer sent a letter to Allstate providing "formal
notice of a potential UM/UIM claim" on July 10, 2013.  Docs. # 58-1, 58-3, 58-4.   Despite Ms.
Montoya's undisputed cooperation with Allstate's requests for records, it appears that Allstate
had not rendered a decision on her claim by the time she filed this lawsuit in October 2014.
From these facts, a jury could conclude that Allstate acted unreasonably with respect to its

investigation and handling of her claim.

Finally, I address an argument that Allstate raised in its reply but did not address in its motion: that Allstate is entitled to summary judgment on Ms. Montoya's bad faith claims because she has made no "specific reference to a particular source of insurance industry standards to establish that Allstate's investigation was lacking," such as a "statute, regulation, or other source of insurance industry standards." Reply at 13 [Doc. # 61]. I need not address this argument because a "party waives issues and arguments raised for the first time in a reply." *Colorado Rail Passenger Ass'n v. Fed. Transit Admin.*, 843 F. Supp. 2d 1150, 1171 (D. Colo. 2011) (quoting *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n. 7 (10th Cir. 2009)). Allstate's argument also fails on its merits. It is true that [w]hether an insurer has acted reasonably in denying or delaying approval of a claim will be determined on an objective basis, requiring proof of the standards of conduct in the industry." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) (so holding with respect to common law bad faith claim); *Sipes v. Allstate Indem. Co.*, 949 F. Supp. 2d 1079, 1085 (D. Colo. 2013) (holding same with respect to statutory bad faith claim). But the party seeking summary judgment carries the initial burden of showing that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). And Allstate's argument seeks to place this burden on Ms. Montoya. To the contrary, Allstate initially has the burden to show that there is no genuine dispute of material fact that its conduct complied with applicable insurance industry standards and, additionally, that it is entitled to judgment as a matter of law. Allstate has not met this burden. In any event, Ms. Montoya has attached to her response an expert report setting forth specific industry standards and concluding that Allstate's handling of her claim fell below those standards in numerous respects. Doc. # 58-12. Allstate's objection that the report is unsworn

and therefore not proper summary judgment evidence is well-founded.  *See, e.g., Jones v. Menard*, 559 F.2d 1282, 1285 n. 5 (5th Cir. 1977).   Nonetheless, even if Allstate had carried its initial burden under Rule 56, this report suggests that it would be premature (at the very least) to grant summary judgment based on Ms. Montoya's failure to prove the applicable standards of conduct in the industry.

### III.  Conclusion

For the foregoing reasons, Allstate's Motion for Summary Judgment [Doc. # 51] is **DENIED**.


DATED: January __15__, 2016, at Denver, Colorado.

BY THE COURT:


__s/Lewis T. Babcock_____<br>LEWIS T. BABCOCK, JUDGE